14

United States District Court
Southern District of Texas
FILED

AUG 0 2 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE FIDEL TREVINO, | § | |
| Petitioner-Defendant | § | |
| | § | |
| vs. | § | CA B-02-006 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff | § | |
| ( CR B-00-276) | § | |

GOVERNMENT'S ANSWER, MOTION FOR DISMISSAL UNDER 8(a) OF THE RULES FOLL. 28 U.S.C. § 2255, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

I.

The Court ordered the Government to respond to Petitioner's, Jose Fidel Trevino (hereinafter referred to as Trevino), 28 U.S.C. §2255 motion filed on January 14, 2002 by March 28, 2002. The Government sought and obtained extensions until August 5, 2002, due to the non-receipt of the re-arraignment and sentencing transcripts ordered produced by the Court. The Government moves to dismiss and, in the alternative, moves for summary judgment.

II.

On July 5, 2000, Trevino was charged by indictment in the Southern District of Texas, Brownsville Division, with conspiracy to possess with intent to distribute in excess of 100 kilos of marihuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B) and with possession with intent to distribute in excess of 100 kilos of marihuana, that is: approximately 208.6 kilos of marihuana in violation of 21

U.S.C. §§841(a)(1) and 841(b)(1)(B) (DOC. 1)[1]. He pled guilty to the conspiracy count of the indictment acknowledged the accuracy of the information of enhancement under 18 U.S.C. §851 (DOC. 64). In exchange for his plea of guilty to count one, the government agreed to recommend at sentencing that Trevino receive credit for acceptance of responsibility, be sentenced at 120 months imprisonment, that his revocation sentence run concurrently with the instant sentence and that he not be prosecuted for illegal re-entry (PSR 5).

The probation department scored the instant offense at base offense level 26, found him to be a leader and accordingly adjusted his score upward by 4 levels, yet recommended that he receive a two-level downward adjustment for timely acceptance of responsibility under U.S.S.G. §3E1.1(a, b), for a total offense level score of twenty-eight (28) (PSR. 32, 35, 38). His criminal history placed him in criminal history category III (PSR 47). However, his 1997 conviction for a federal drug felony out of the instant court increased Trevino's statutory minimum mandatory sentence to 120 months imprisonment (PSR 68). Trevino did not object to the PSR (DOC 76).

On January 12, 2001, at sentencing, the district court adopted the PSR as written, and sentenced Trevino to the minimum statutory sentence of 120 months imprisonment, to be followed by an eight-year term of Supervised Release for the

---

[1] DOCument numbers are taken from the docket sheet of the original cause.

instant offense. He was also ordered to pay $100.00 in mandatory costs. The judgment was entered January 23, 2001 (DOC 97).

Trevino did not directly appeal his conviction of sentence. On January 14, 2002, Trevino filed the instant motion.

III.

The instant pleading is timely.

IV.

The Government denies each and every allegation of fact made by Trevino except those supported by the record and those specifically admitted herein, and demands strict proof thereof.

V.

ALLEGATIONS

Trevino alleges his constitutional rights were violated due to ineffective assistance of counsel, an involuntary plea, and an *Apprendi* violation.

1. His trial counsel was ineffective in five different manners:

   a. Failing to investigate the case;

   b. Exerting "improper pressure" upon Trevino to plead guilty;

   c. Failure to make a counter plea agreement offer directly to Main Justice, rather than negotiating strictly with "local" prosecutors;

d. Failure to take part in sentencing hearing; and

e. Failure to argue for downward departure.

2. Trevino's plea was involuntary due to the fact that the government maintained a strategic advantage over Trevino at sentencing, by the government using information to cause a four-level adjustment in his sentence as a "leader". The plea was also involuntary due to the government "luring" Trevino to plead guilty with promises of a less severe sentence.

3. Trevino alleges his indictment was jurisdictionally defective for its failure to set out the weight of the drug charged. Further, that 21 U.S.C. §841 is unconstitutional due to its conflict with the principles announced in *Apprendi.*

4. Finally, Trevino alleges his four-level upward adjustment for his role as "leader" is unconstitutional under the principles set out in *Apprendi.*

VI.

TREVINO'S BURDEN

Trevino' first hurdle is that of "cause and prejudice". *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1977)(holding "plain error" incorrect standard for §2255and requiring "cause and prejudice" standard). Trevino must first show cause that would excuse his failure to raise this claim on direct appeal and actual prejudice from the error that he now alleges. The motion should be denied and dismissed under Rule 8(a) of the rules foll. 28 U.S.C. §2255 inasmuch as he offers insufficient cause and prejudice for obtaining review on collateral attack. *See, e.g.,*

*United States v. Shaid*, 937 F.2d 228, 231-232 and n.7 (5th Cir. 1991) (en banc) (constitutional or jurisdictional issue reviewable for first time on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice or that the uncorrected error would result in a complete miscarriage of justice).

An allegation of "miscarriage of justice" warrants collateral review where a constitutional violation is alleged to have caused the conviction of one innocent of the crime. *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 1470 (1991); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643 (1986). "The 'cause' standard requires [the movant] to show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 [5th Cir. 1992] which in turn quotes *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645). "Objective factors that constitute cause include: (1) interference by officials that makes compliance with the procedural rule impracticable; (2) a showing that the factual or legal basis for the claim was not reasonably available to [the Petitioner] at the prior occasion; and (3) ineffective assistance of counsel in the constitutional sense." *Id.* Trevino does not proffer any "cause" for failing to raise the instant issues on direct appeal. Although Trevino suggests his trial counsel was constitutionally ineffective at the trial level,

he makes no claim of ineffective assistance as an excuse for his failure to raise the instant issues on direct appeal.

Trevino's claimed ignorance of the law fails to sustain Trevino's burden to demonstrate cause for failure to bring the issue on direct appeal. "Ineffective assistance", if demonstrated, may satisfy the "cause" prong of his burden.

Trevino alleges that he suffered "prejudice" as a result of the "ineffective assistance" in that he received a sentence greater than that to which he should have been exposed. Further, (inferentially) that he would not have plead guilty had he not been pressured into pleading guilty. Further, that the government's luring him into a plea rendered his plea involuntary. Finally, Trevino alleges he was prejudiced by his ongoing incarceration for conviction under an indictment which is jurisdictionally defective due to *Apprendi* errors.

To avoid the consequences of a dismissal by applying the fundamental-miscarriage-of-justice exception to Rule 9(b) foll. 28 U.S.C. §2255, a movant must demonstrate, as a factual matter, that he did not commit the crime of conviction. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 861, 867 (1995); *Ward v. Cain*, 53 F.3d 106, 107 (5th Cir. 1995) (citing *Schlup*). Stated differently, the movant must demonstrate that the failure to consider his claim will result in his continued incarceration though innocent. *See Saahir v. Collins*, 956 F.2d 115, 120 (5th Cir. 1992); *United States v. Espinoza*, 82 F.3d 640, 642 (5th Cir.1996) (citing *Saahir*).

Trevino does not allege he is innocent. He, therefore, fails the "prejudice" prong of his "cause and prejudice" burden.

1. INEFFECTIVE ASSISTANCE TO SATISFY THE "CAUSE" PRONG

A. Legal Principles Governing Ineffective Assistance.

Ineffective assistance of counsel claims are generally reviewed under the now well-established *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984); *Roe v. Flores-Ortega*, 528 U.S. 470, 471, 120 S.Ct. 1029, 1034 (2000). To succeed on such a claim, a petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court "must strongly presume that counsel has exercised reasonable professional conduct." *United States v. Samples,* 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted).

In order to succeed on this claim, Trevino must establish that trial counsel's actions, "fell below an objective standard or reasonableness" and that 'but for' such unprofessional errors the outcome would have been different. *United States v. Samples*, 897 F.2d at 196. Trevino fails in both regards.

To prevail on his claims, Trevino must identify the acts or omissions that are outside the wide range of professionally competent assistance and then demonstrate that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial. To this end, the court will indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable". *Id.* at 690.

The burden falls on the accused to prove a violation of constitutional standards. The focus is on the attorney's impact on the adversarial process; the constitutional standards may be met irrespective of an accused's evaluation. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984).

i. At the plea stage.

"Effective assistance" requires counsel to provide meaningful advice on the facts and law applicable to a plea agreement. *United States v. Hodges*, 259 F.3d 655, 659 (7th Cir. 2001); *United States v. French*, 719 F.2d 387, 389 (11th Cir. 1983). "While it need not be errorless, counsel's advice must be within the realm of competence demanded of attorneys representing criminal defendants". *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993). In the context of a guilty plea,

Trevino must demonstrate that, but for counsel's errors, he would not have plead guilty and would have gone to trial. *Id.* citing *Hill*, 474 U.S. at 59.

ii. Sentencing errors

In the context of sentencing errors, the petitioner must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843-844 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

Even if Trevino demonstrates that his counsel provided constitutionally infirm representation, Trevino must also demonstrate prejudice. Although Trevino need not demonstrate that, absent the error, his sentence would have been "significantly less harsh", he must demonstrate prejudice. "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance". *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001).

2. THE BASIS OF TREVINO'S CLAIMS

Several of Trevino's claims are contradicted by the record.

A. Untoward pressure to plea/Lured to plea guilty

Regarding his claim of "untoward pressure" by his counsel to plead and by the government "luring" him to plead, the record of his plea contradicts these factual assertions. Trevino was cautioned by the district court that he did not have to plead guilty (Rearr. Trans., P.3). Trevino advised he was pleased with the services of his attorney and had sufficient time to discuss his case. Trevino was advised of his possible maximum sentence and the effect of the enhancement filed against him. Trevino swore to the district court that he understood these matters (Rearr. Trans. P. 12-15, 19-20). At Trevino's plea, Trevino acknowledged that the plea agreement contained the full extent of his agreement. Trevino swore there were no other promises or threats made (Rearr. Trans. P. 27, 33, 37).

B. Failure to investigate/Failed to counteroffer plea to Main Justice

The record fails to support Trevino's claim that his counsel failed to investigate the case. Counsel filed extensive discovery motions (DOC. 42). Counsel also developed an alibi defense as well as an entrapment defense and provided required notice to the government (DOC. 40, 41, 44). Counsel also litigated these motions before the court (DOC. 51). The nature of the evidence against Trevino left Trevino little choice but to cut his losses and plead guilty. The record discloses two of Trevino's co-conspirators cooperated with the government against Trevino (DOC. 66, 67).

Trevino's claim that his counsel should have negotiated directly with Main Justice is without any foundation. There is no mechanism for counsel to negotiate directly with Main Justice. Nor has Trevino demonstrated that a negotiation directly with Main Justice would have resulted in a lesser sentence.

VII.

SUBSTANTIVE CLAIMS

1. Ineffective assistance

A. Failing to Investigate and to provide meaningful advice

Trevino alleges his trial counsel provided him constitutionally infirm representation by not investigating the facts surrounding the charges against him, and in failing to provide meaningful advice regarding defense strategies and by pressuring him to plead guilty.

Although Trevino is entitled to "effective assistance" of counsel in investigating available defense strategies and in determining whether to plead guilty, Trevino does not explain how he was prejudiced by his counsel's "failure". *Childress v. Johnson*, 103 F.3d 1221, 1227 (5th Cir. 1997). Trial counsel actually developed two potential defenses, of alibi and entrapment. It was Trevino's decision to plead guilty. Trevino does not suggest any other defenses or available evidence neglected by his counsel.

B. Exerting improper pressure

Trevino explains that the improper pressure consisted of his counsel advising him that if he didn't plead guilty, he would receive more than 120 months imprisonment. If Trevino didn't plead guilty, and he was convicted at trial, which appeared highly likely, he would score at level 30, criminal history category III, for a range of 121-151 months imprisonment. His counsel was merely accurately predicting his sentence were he convicted at trial. Ironically, counsel would have been deficient had he not fully explained what Trevino would likely receive if he were convicted at trial.

If this were error, Trevino does not explain how he was prejudiced by such error. As discussed below, Trevino's plea was voluntary. He necessarily fails the "ineffective assistance" prejudice prong as well.

C. Failure to counter offer directly to Main Justice

Even if countering the government's plea offer directly to the Attorney General were possible, Trevino fails to demonstrate how such maneuver would benefit him. Trevino was facing a minimum mandatory sentence without cooperation and with a leadership role. His dye was cast. Not even Janet Reno could have obtained a lesser sentence for him.

D. Failure to take part in the sentencing hearing

As discussed above, Trevino does not demonstrate what his counsel could have done additionally to lower his sentence. He was facing a mandatory minimum sentence.

E. Failure to argue for a downward departure

Trevino fails to suggest for which downward departure he was eligible. He didn't cooperate, he was ineligible for "safety valve". He was still on supervised release for a previous drug conviction out of the same court.

As the above premises upon which Trevino's instant complaint is based have no legal support, Trevino's counsel's performance can not be shown to be deficient under *Strickland.* As Trevino has failed to demonstrate specifically what his counsel should have done, or exactly how he suffered any prejudice therefrom, he can show neither "cause" nor "prejudice" by his attorney's "failure" to take such action. Further, Trevino does not allege he is innocent. He, therefore, fails the 'miscarriage of justice' test.

2. Substantive involuntary plea claim

A. Legal Principles Governing Involuntary Plea.

Trevino alleges his plea of guilty was involuntary. Trevino inferentially claims that, had he known the sentence he would receive he would not have plead guilty.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 523 U.S. 1067, 121 S.Ct. 2220 (U. S. Jun 4, 2001). The terms "voluntary" and "knowing" are frequently used interchangeably, although, strictly speaking, the terms embody different concepts. Compare 1A Charles Alan Wright, FEDERAL PRACTICE and PROCEDURE §172, 142-44 (3d ed.1999)(stating a plea of guilty is not voluntary if it is induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature), with *Id.* §173, 171-73(stating that a plea is not knowing unless, among other things, defendant understands "what the maximum possible penalty is, including any potential fine and the effect of any special parole or supervised release term").

*United States v. Hernandez*, 234 F.3d 252, 254-255 (5th Cir. 2000). To be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence." See *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The defendant need only understand the direct consequences of the plea; he need not be made aware of every consequence that, absent a plea of guilty, would not otherwise occur. See *Trujillo v. United States*, 377 F.2d 266, 266 (5th Cir. 1967), *cert. denied*, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967).

First of all, Trevino misconstrues the provisions of the plea agreement. The plea agreement does not state that the government will recommend a sentence of

less than 120 months. Furthermore, during the plea proceedings, the U.S. district court cautioned Trevino that the plea agreement was not binding upon the court. The district court elicited from Trevino that Trevino fully understood the charges against him, his maximum possible sentence, as well as his minimum sentence, which he ultimately received, and that his plea was made freely and voluntarily (Rearr. Trans. P. 12-15, 19-20). The record, thus, demonstrates that Trevino entered his plea voluntarily and that his contention that his plea was not voluntary does not entitle him to §2255 relief. *United States v. Drummond*, 910 F.2d 284, 285-286 (5th Cir. 1990)(although no 'direct' evidence on point, record contained 'conclusive' evidence that plea was voluntary obviating need for hearing); See *Diggs v. United States*, 447 F.2d 460 (5th Cir. 1971).

Again Trevino's claim is premised upon a false belief. Trevino's plea agreement did not provide for a recommended sentence below his 120-month mandatory minimum sentence, nor was the agreement binding upon the district court. As such misperceptions forms the sole basis for Trevino's claim his plea was involuntary, such claim fails.

3. *Apprendi* claim

A. Failure to Demonstrate Cause and Prejudice for *Apprendi* Claim

Assuming that the *Apprendi* rule does fall within a *Teague* exception, Trevino must show both cause for his failure to raise this issue at trial, and on direct appeal, and prejudice. *United States v. Frady*, 456 U.S. 152, 167-168, 102

S.Ct. 1584, 1594 (1982). A showing of cause requires a showing of some external impediment that prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472 (1991). Even though the law may have been settled against him on an issue, "the futility of raising an objection ... cannot alone constitute cause for a failure to object at trial." *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573 (1982). Here, as in *Smith*, 241 F.3d 546, 2001 WL 111590 *2 (7th Cir. 2001), Trevino does not claim nor demonstrate sufficient "cause" to excuse him from failing to raise this issue on direct appeal.

To show prejudice, Trevino must meet a higher standard higher even than plain error. *Smith*, 241 F.3d at 546. He must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170, 102 S.Ct. at 1596 (emphasis in original). Here, Trevino cannot meet that burden. First, the amount and type of drugs involved was alleged in the indictment. The indictment noticed him he was facing 40 years imprisonment. His sentence was less than 40 years. He can show no prejudice.

B. Legal analysis under *Apprendi*

Although, subject to the "cause & prejudice" hurdle, Trevino's *Apprendi* claim is cognizable of §2255 review. However, Trevino's case does not offend *Apprendi*. Trevino's count of conviction alleged an amount of marihuana within the statutory sentencing range in which he was sentenced. Count one alleged "a

quantity exceeding 100 kilos of marihuana" (DOC. 1). Trevino plead guilty to count one. The allegation of "exceeding 100 kilos" placed Trevino in a statutory sentencing range of 5-40 years. Trevino's enhancement increased his maximum sentence to life imprisonment under 21 U.S.C. §841(b)(1)(A). The principles announced in *Apprendi* do not apply to issues relating to recidivism which increases a sentence. *Apprendi v. New Jersey*, 530 U.S. 466, 472, 120 S.Ct. 2348, 2355 (2000). As Trevino's sentence was less than life imprisonment, *Apprendi* is not implicated. *United States v. Meshack*, 225 F.3d 556, 576 (5th Cir. 2000), *cert. denied*, 531 U.S. 1100, 121 S.Ct. 834 (U.S. Jan 8, 2001). His indictment did not run afoul of *Apprendi.*

*Apprendi* did not render 21 U.S.C. §841 unconstitutional. The case in which Trevino relies, *United States v. Buckland*, 259 F.3d 1157 (9th Cir. 2001), was reversed following rehearing en banc. *United States v. Buckland*, 277 F.3d 1173 (9th Cir. 2002). The Ninth Circuit followed the other circuits which confronted the issue in deciding that *Apprendi* did not render §841 unconstitutional. The Fifth Circuit has likewise ruled on this issue, finding §841 constitutional. *United States v. Fort*, 248 F.3d 475, 483 (5th Cir. 2001); *United States v. Slaughter*, 238 F.3d 580, 582 (5th Cir. 2000).

Finally, Trevino's claim that his upward departure under the Guidelines violates *Apprendi* is without legal support. Mere sentencing guideline adjustments do not implicate *Apprendi. United States v. Doggett*, 230 F.3d 160, 165 (5th Cir.

2000), *cert. denied*, 531 U.S. 1177, 121 S.Ct. 1152 (U.S. Feb 20, 2001); *United States v. Cernobyl*, 255 F.3d 1215, 1220 (10th Cir. 2001).

VIII.

CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Government respectfully prays that Trevino's §2255 petition be dismissed, or in the alternative, subject to denial by summary judgment.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

Mark M. Dowd
Assistant U.S. Attorney
600 E. Harrison, # 201
Brownsville, Texas 78520
Texas Bar No. 06070500
Federal I.D. No. 9314
(956) 548-2554/Fax (956) 548-2549

CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney, certify that a true and correct copy of the Government's Answer, Motion for Dismissal Under 8(a) of the Rules Foll. 28 U.S.C. §2255, or in the Alternative, Motion for Summary Judgment was mailed via Certified Mail, Return-Receipt Requested to Jose Fidel Trevino, Reg. No. 77403-079, F.C.I., P.O. Box 9000, Forrest City Ark, 72336-9000, on this the 2nd day of AUGUST, 2002.

MARK M. DOWD
Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | { | CAUSE B-00-CR-276 |
| | { | |
| VS. | { | BROWNSVILLE, TEXAS |
| | { | |
| JOSE FIDEL TREVINO | { | **SEPTEMBER 19, 2000** <br> **JANUARY 12, 2001** |

**TRANSCRIPT OF REARRAIGNMENT & SENTENCING PROCEEDINGS**
**BEFORE THE HON. FILEMON B. VELA**

**APPEARANCES:**

FOR THE GOVERNMENT: MR. JODY YOUNG
Brownsville, Texas

FOR THE DEFENDANT: MR. JEFFREY WILDE
MR. ED STAPLETON
Brownsville, Texas

COURT REPORTER: MR. WILLIAM G. HOLLOWAY
Brownsville, Texas

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
TRANSCRIPT PRODUCED BY COMPUTER

PROCEEDINGS, SEPTEMBER 19, 2000:

[INTERPRETED]

THE COURT: Good morning. Please be seated.

I will call the following cases for rearraignment. Cause B-00-354, United States versus Adan Ulloa-Rivera.

MR. ESQUIVEL: Joe Esquivel for the Government.

THE COURT: B-00-358, United States versus Eliseo Morua.

MR. YOUNG: Jody Young for the United States, Your Honor. United States is present and ready to proceed.

MR. GARZA: Your Honor, Noe Garza for Mr. Morua. The Government has just provided me with the plea papers and I have not had sufficient time to review them with my client, Your Honor.

THE COURT: Do that after we call our cases.

MR. GARZA: May I be allowed to speak to my client?

THE COURT: Surely.

B-00-276, United States versus Jose Fidel Trevino.

MR. WILDE: We are ready, Your Honor.

THE COURT: What count?

MR. WILDE: Count 1, the conspiracy count.

THE COURT: Adan Uloa-Rivera. Talk to me in a loud voice.

THE DEFENDANT: Yes. Yes.

THE COURT: Jose Fidel Trevino.

THE DEFENDANT: Yes.

THE COURT: Each one of your attorneys have indicated to me that you intend to come here and give up some very important rights and eventually plead guilty to the charges against you. And I want each of you to know that you do not have to give up any right nor do you have to plead guilty unless you want to, unless you do so voluntarily.

Do you understand that, Mr. Adan Ulloa-Rivera?

THE DEFENDANT: Yes.

THE COURT: Jose Fidel Trevino?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The first thing we are going to do is place each one of you under oath. If you will, please, raise your right hand.

[OATH ADMINISTERED TO EACH DEFENDANT]

THE DEFENDANT: I do, Your Honor.

THE DEFENDANT: Yes.

THE COURT: By the oath each of you took you subjected yourself to the laws of perjury of this country which means this. That if at anytime during the course of this proceeding, whether today or hereafter, you tell the Judge something that is not true, as a result thereof you can be confined in the penitentiary for five years and in addition you can be fined $250,000.

There can also be imposed against you a Supervised

Release Term of as many as three years. Now, what a Supervised Release Term means, is that while it is in effect, if you violate any condition of it, you would then be subject to being confined in a jail-type institution for the period of time that the Judge gave you or imposed upon you as a Supervised Release Term.

And there will have to be imposed against you an assessment of $100.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Both defendants before me have answered in the affirmative.

Do each of you feel like you have had sufficient time to discuss your case with your attorney and are you satisfied with his services?

THE DEFENDANT: Yes.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Both defendants before me have answered in the affirmative.

Remember when we make reference to matters that they are just for you, nobody else. When we make reference to rights that you have, it is not for both of you, it is just for you, as an individual, and no one else.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Both defendants have answered in the affirmative.

And what that means, when we talk about, for example, the rights that you have, it is not for both of you, it is just you and you alone.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Both defendants before me answered in the affirmative.

In the Jose Fidel Trevino case, is the Government -- is the Government contending a specific amount in view of Apprendi?

MR. YOUNG: No, Your Honor. Well, the amount is listed in the indictment, which would be over 100 kilograms. The actual seizure, which will be the substantive count, involves approximately 459 pounds.

THE COURT: Well, I would suggest that you would consider Count Number 2 in view of recent decisions.

MR. WILDE: Your Honor, I don't believe Mr. Trevino is in actual possession of the marijuana. Perhaps on an aiding and abetting there might be some evidence.

THE COURT: The mandates appear to indicate that with

respect to amounts anything that's going to affect sentencing that is alleged should be proven.

What is it that is involved here?

MR. YOUNG: Your Honor, from my understanding, Count 1 which is the conspiracy does give the defendant notice that he is facing a minimum of five years. I believe that satisfies Apprendi. I think the concern here is simply that there was additional enhancement that were not in the indictment in the Apprendi case and therefore the defendant was not given notice.

THE COURT: How much is the Government contending that the defendant was involved in?

MR. YOUNG: The amount was 459 pounds, Your Honor.

THE COURT: Does the defendant agree to that?

MR. WILDE: Yes, Your Honor.

THE COURT: What?

MR. WILDE: Yes, Your Honor.

THE COURT: All right. As an allegation by the Government.

If you plead guilty you are going to be giving up some very important rights. Among the rights that you will be giving up is the right that each of you have to remain silent. As you stand accused, you have to disprove nothing in your case. You have to offer no evidence in your case. You do not have to testify in your case. As a matter of

fact, you do not even have to answer the Judge's questions. But if you plead guilty, you are going to be giving up that right to remain silent.

Do you understand that, Mr. Rivera?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that, Mr. Trevino?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are each of you over 18 years-of-age?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes.

THE COURT: Both defendants have answered in the affirmative.

Do you know how to read and write?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes.

THE COURT: Both defendants have answered in the affirmative.

Do you know the difference between right and wrong?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes.

THE COURT: Both defendants have answered in the affirmative.

During your lifetime have you ever been in a mental hospital or mental institution?

THE DEFENDANT: No, Your Honor.

THE DEFENDANT: No. Nothing.

THE COURT: Both defendants have answered in the negative.

Have either of you ever suffered from a mental disorder?

THE DEFENDANT: No, Your Honor.

THE DEFENDANT: No, nothing.

THE COURT: Both defendants have answered in the negative.

Have you found each one of these persons coherent and able to assist you in the defense of their respective case and are you satisfied that they understand the nature of the charges against them?

MR. WILDE: Yes, Your Honor.

THE COURT: In regard to both counts -- both defendants?

MR. WILDE: Yes, Your Honor.

THE COURT: What is it, Adan Ulloa-Rivera, that you understand you are being accused of?

THE DEFENDANT: Well, because of having come illegally into the country and because of a crime.

THE COURT: Well, you understand -- you are correct. They are alleging that you came into this country without having any legal right after you had been arrested and deported; in addition, that you had violated the laws

theretofore by having committed and been convicted of what has been characterized as an aggravated felony, which is a serious crime.

Is that what you understand you are being accused of?

THE DEFENDANT: Yes.

THE COURT: What is it, Jose Fidel Trevino, that you understand you are being accused of in Count Number 1?

THE DEFENDANT: Your Honor, well, Charge Number 1, because I helped the informant who was in Mexico. And he was the one who insisted that we -- that we sell drugs to him on the Mexican side. I never came to the United States and have the intention of selling anything to anybody.

THE COURT: You understand they are not accusing you of having done anything in the United States. You don't have to do anything in the United States to be guilty of the offense for which you are charged. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You never did what, now?

THE DEFENDANT: I never had any intention of selling drugs to the informant here in the United States.

THE COURT: Did you have that intention in Mexico?

THE DEFENDANT: I was obliged by necessity, of course, by necessity, because he promised to give me some money on the Mexican side.

THE COURT: In Count Number 1 they are accusing you of having engaged in a conspiracy. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: A conspiracy under the laws of the United States is simply where two or more people engage and willfully participate in a plan to violate the law. You understand that?

THE DEFENDANT: Yes, Your Honor. Yes.

THE COURT: What they allege is, the purpose of that conspiracy was to possess with intent to distribute specifically 459 pounds of marijuana. Do you understand that?

THE DEFENDANT: Yes, I do understand.

THE COURT: You understand that's what they are accusing you of?

THE DEFENDANT: Yes, I do understand.

THE COURT: You also understand that a person can be involved in a conspiracy, although that person has never been in the United States, so long as the object of that conspiracy involves activity that is destined to involve or take place in the United States. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In other words, a person can be in another country and if a person engages in activity, matters

that are going to actually take place in the United States, that person never has to set foot in the United States and still be accused and actually found guilty of committing an offense under the laws of the United States. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you now understand what they are accusing you of in this case?

THE DEFENDANT: Yes, I do understand.

THE COURT: I find that each of you who stand before me understand what you are accused of in your respective case, are competent to assist in the defense of your respective case and are competent to being arraigned and tried in your respective case.

Has there been any plea bargaining in the case of Adan Ulloa-Rivera?

MR. ESQUIVEL: No, Your Honor.

THE COURT: Mr. Adan Ulloa-Rivera, your attorney tells me and the Government's attorney tells me that nobody has promised you anything to come here to plead guilty. Let me ask it this way. Has anybody promised you anything for coming here to plead guilty?

THE DEFENDANT: Nothing.

THE COURT: All right. What plea agreement, if any, in the case of Jose Fidel Trevino?

MR. YOUNG: Your Honor, in exchange for the defendant's plea of guilty to Count 1, the conspiracy count, the United States will recommend that the defendant is eligible for acceptance of responsibility, a recommendation that the defendant be sentenced to 120 months for this offense.

THE COURT: To what, please?

MR. YOUNG: That the defendant be sentenced to 120 months for this offense. United States and defense recognize that is a nonbinding recommendation. However, it is the recommendation by the Government.

THE COURT: Why 120 months?

MR. YOUNG: Your Honor, the defendant was enhanced in the --

MR. YOUNG: Oh, there is an enhancement. I see. I gather an enhancement of the prior conviction?

MR. YOUNG: Yes, Your Honor.

THE COURT: Okay. So the recommendation, since both sides will agree, will entail not more than 120 months.

MR. YOUNG: Yes, Your Honor.

THE COURT: The enhancement would require no less than 120 months.

MR. YOUNG: Yes, Your Honor.

THE COURT: What else, sir?

MR. YOUNG: A dismissal of the remaining count. The

United States agrees not to prosecute any illegal reentry charges stemming from the defendant's entry into this country because of this case. And United States recommends that the defendant receive five months in a revocation of the pending supervised release and that this revocation run concurrent with the sentence in this case.

THE COURT: Supervised Release Term involves another -- the offense in question for which is being used to enhance this matter.

MR. YOUNG: Yes, Your Honor.

THE COURT: He is on Supervised Release Term.

MR. YOUNG: Yes, Your Honor.

THE COURT: For how long?

MR. YOUNG: Five years.

THE COURT: Five years. And you are recommending five months?

MR. YOUNG: Yes, Your Honor.

THE COURT: Is that the agreement?

MR. WILDE: Yes, Your Honor, and that is to run concurrent. That was part of the agreement.

THE COURT: Five months to run concurrent.

MR. WILDE: That was part of the recommendation, Your Honor.

THE COURT: Mr. Trevino, your attorney and the Government's attorney told me an agreement has been entered by

and for you in this case to the effect that if you plead guilty to Count Number 1, they are going to ask the Judge to dismiss all the other counts against you. That you be -- that it was also called to my attention that the Government has filed an enhancement, in other words. This will be presented to the Court to show that you have been convicted for another offense, another drug offense. And that under the laws that then will subject you to a minimum sentence, you understand, if you were to be found guilty of this case. That the minimum sentence could not be less than ten years to serve without parole. And the Government and your attorney have told me that an agreement has been reached to the effect -- it is going to be recommended that you be sentenced to not more than 120 months or ten years for your offense. You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Further, that the Government is not going to pursue or charge you with an offense for having come here illegally, Immigration offense, in relation to this particular case. And, in addition, that if your Supervised Release Term is revoked, which apparently is something that you are subject to in connection with the other case, being used to enhance this case, that any sentence be imposed will not exceed five months and that it run concurrently with that sentence that will be imposed in this case. Did you understand all of

that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is that the way you understand the entirety of the agreement?

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: Has anybody promised you anything else?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand that the Judge does not have to go along with that agreement? If the Judge does not follow that agreement, even then the Judge does not, does not, have to give you an opportunity to withdraw your plea of guilty? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right, sir. Under the circumstances I suppose I better do the sentence because of this particular agreement. Why involve Judge Tagle in some conflict.

Any objection?

MR. WILDE: No objection from the defendant, Your Honor.

MR. YOUNG: None, Your Honor, from the United States.

THE COURT: Do both of you understand that even if an agreement has not been reached or during the course of your sentence there is any kind of recommendation made to the Judge by what sentence should be imposed against you, the Judge does

not have to go along with any agreement entered in your case regardless of when it is entered into. And the Judge does not -- if the Judge does not go along with any agreement entered in your case, the Judge does not, does not, have to give you an opportunity to withdraw your plea of guilty.

Do you understand that, Mr. Trevino?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Rivera?

THE DEFENDANT: Yes, Your Honor.

THE COURT: See, in your respective cases, even if you consider yourself to be guilty, you still -- for each one of you, for each one of your cases, you have a right to have your case tried before a jury. And a jury is a body of 12 persons who sit in a jury box like this one here and they are selected from a large group of individuals who are chosen at random with the help of your attorney at your side. Once that jury is duly impaneled, the only way that you can be found guilty is for all 12 of them to be convinced and persuaded from the evidence that the Government's attorney introduced to them that in fact you are guilty beyond a reasonable doubt.

Do you understand your right to have your case tried before a jury but if you plead guilty you are going to be giving up and waiving that right?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes, I do understand, Your Honor.

THE COURT: Both defendants have answered in the affirmative.

Do each of you understand that if you plead guilty, this proceeding that we find ourselves in is going to conclude your right to a trial altogether? You are not going to be entitled to any further trial in your case with or without a jury. Everything is going to end here. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Both defendants before me have answered in the affirmative.

Do each of you understand that if you plead guilty you are going to be giving up the right that you have by which you can make the Government of the United States bring every witness that they have in open court so that when they are testifying they have to look at you and then your attorney has to be given an opportunity to ask them questions? We call that cross-examination. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Both defendants have answered in the affirmative.

Do each of you understand that if you plead guilty, you are going to be giving up your very important right of

appeal? That is a process that takes place by a record, like one is being made now, of everything that is said, done and happened in your case. That record is then sent to another court made up of more than one judge that we call the Court of Appeals who review that record to make sure that your trial was had as the law requires.

If you did not have any money to pay for that record, it will be provided to you at no cost.

If you did not have any money to pay for an attorney to take your case to that Court of Appeals, your attorney would be provided to you at no cost.

Do you understand your important right of appeal but if you plead guilty you are going to be giving up and waiving that right?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Both defendants have answered in the affirmative.

Do you, Adan Ulloa-Rivera, understand that if you persist in pleading guilty that as a result thereof you can be confined in the penitentiary for 20 years or you can be fined $250,000, or both; that is to say, you can be fined $250,000 and also confined in the penitentiary for 20 years. That there can be imposed against you a Supervised Release Term of three years. That there has to be imposed against you an

assessment of $100. And the Judge is going to have to consider any applicable Sentencing Guidelines in your case but may depart therefrom under some circumstances.

Do you understand that, Mr. Adan Ulloa-Rivera?

THE DEFENDANT: Yes.

THE COURT: Do you, Jose Fidel Trevino, understand that if you persist in pleading guilty, that as a result thereof you can be confined in the penitentiary for as many as 40 years, but in view of the fact that the Government has filed an application to consider the fact that you have been convicted for a like offense, that you cannot be confined in the penitentiary for less than ten years, you cannot be confined in the penitentiary for less than ten years, or you could be fined $2 million, or both. That is to say, you can be fined $2 million and also confined in the penitentiary for 40 years. That there can be imposed against you a Supervised Release Term of five years. Well, let's put it this way. There has to be imposed against you a Supervised Release Term of five years. There has to be imposed against you an assessment of $100. And the Judge does have to consider any applicable sentencing guidelines in your case but may depart therefrom under some circumstances. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

MR. YOUNG: Your Honor, excuse me, I believe that the enhancement might be subject to ten to life.

THE COURT: Let me correct something. Mr. Trevino, do you understand, set aside what I just told you, that because of the fact that the Government has filed this application to consider the matter of your prior conviction for a like sentence, that you then can be sent to the -- be confined in the penitentiary for the remainder of your life, but you cannot -- for the remainder of your life, not 40 years -- but you cannot be confined in the penitentiary for less than five years -- for less than ten years, less than ten years. You cannot be confined in the penitentiary for less than ten years. Or you can be fined --

MR. YOUNG: $4 million, Your Honor.

THE COURT: -- $4 million, or both. That is, to say, you can be confined in the penitentiary for the remainder of your life and there can also be imposed against you a fine of $4 million.

That there has to be imposed against you a Supervised Release Term of as many as eight years.

That there has to be imposed against you an assessment of $100.

And the Judge is going to have to consider any applicable Sentencing Guidelines in your case but may depart therefrom under some circumstances.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did both of you understand everything that we talked about?

THE DEFENDANT: Yes, Your Honor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Both defendants have answered in the affirmative.

Do either of you have any questions of me or of your attorney?

THE DEFENDANT: No.

THE COURT: That was Mr. Rivera.

Do you have any questions of me or of your attorney, Mr. Trevino?

THE DEFENDANT: I am in your hands, Your Honor.

THE COURT: Well, that is not what I asked you. My question was, whether you had any questions of me or of your attorney, because it is very important that you understand everything that we have discussed. Did you understand everything that we talked about?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions of me or of your attorney?

THE DEFENDANT: Would you have some consideration for me as far as my sentence goes?

THE COURT: Well, sir, you understand that there are certain things the law imposes upon judges in the final

determination. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And I want you to understand that what I have explained to you as far as consequences are concerned are things that you face. My question to you is, do you understand what we have discussed?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions of me? This is the time to ask questions of me or of your attorney.

You have presented to me a statement. All right. This is in Spanish, sir. This is your statement. I am going to read it in the record in English and the interpreter is going to transit it to you in Spanish and you tell me if this is what you say.

"Your Honor, Filemon, B. Vela, District Judge. I address you with all respect and sincerely that you deserve. I want you to please understand my situation. I fully admit my responsibility of those things for which I am accused. My responsibility or involvement was that of a intermediary who was solicited by the informant, the confidential informant, for the Government. That information reached Matamoros, Tamaulipas, Mexico, such that it did involve me in a business that was going to in effect leave for me a minimum amount of money in cash. Since I found myself in economic difficulties, such as rent and light and other necessitates to

my family, and my concern to solve these problems, with the insistence of the informant, in effect I was left to engage in such a stupid decision that now actually it was just a matter for which I will paying, a decision to be in jail away from my family and loved ones. Honorable Judge, I was an instrument of the informant with consequences or economic results and other motives that I do not understand or did not know by which I delivered to somebody and subjected myself to being processed as I am today. Thank you for your attention."

The informant I assume had -- the informant [SPANISH SPOKEN].

THE INTERPRETER: "The informant thought he had a slippery eel in his hands but it turns out that he had a lizard that wasn't worth anything."

THE COURT: Is this what you wrote me, sir?

THE DEFENDANT: Yes.

THE COURT: Is this what you wanted me to see?

THE DEFENDANT: Yes.

THE COURT: All right. Anything you tell me, you did commit the crime for which you are being accused. You understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have anything else you want to say to me?

THE DEFENDANT: No.

THE COURT: All right. Rearraign Mr. Trevino --

MR. YOUNG: Yes, Your Honor.

THE COURT: -- of Count Number 1 in Cause B-00-276.

MR. YOUNG: Yes, Your Honor.

In the United States District Court.

Southern district of Texas.

Brownsville Division.

United States of America versus Jose Fidel Trevino.

The Grand Jury charges in Count 1 of the indictment.

From in or about April 2000 and up to the presentment of this indictment, in the Southern District of Texas, and elsewhere, and within the jurisdiction of the Court, defendant Jose Fidel Trevino, did knowingly and intentionally conspire and agree with persons known and unknown to the Grand Jurors to knowingly and intentionally possess with intent to distribute a quantity exceeding 100 kilograms of marijuana, a Schedule I, controlled substance.

In violation of Title 21, United States Code, Sections 846, 841 (a)(1), and 841(b)(1)(B).

A true bill.

Signed by the foreman of the Grand Jury.

Mr. Trevino, did you understand Count 1 as it has been read to you?

THE DEFENDANT: Yes.

MR. YOUNG: How do you plead to Count 1? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right, sir. Also read the enhancement filed herein, sir, as matters of which you have been guilty. The Government has also alleged the following:

MR. YOUNG: United States District Court.

Southern District of Texas.

Brownsville Division.

United States of America versus Jose Fidel Trevino.

Criminal Number B-00-276-01.

Information of Prior Conviction.

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the United States attorney and pursuant to section 851 (a)(1), Title 21, United States Code Annotated, files this Information of Prior Conviction of this defendant.

The United States represents to the Court that said defendant has the following prior conviction and is therefore liable for the enhancement provisions of Section 841(b)(1)(B), Title 21, United States Code, in that Jose Fidel Trevino was convicted in the United States District Court, Southern District of Texas, Cameron County, Texas, on February 19, 1998, before Judge Filemon B. Vela, Case Number B-97-388-03, for Possession with intent to Distribute, approximately 750

pounds of marijuana, a Controlled substance. Attached is an exhibit as Exhibit A, a certified copy of the defendant's judgment in this case.

Signed by Jody Young, Assistant United States Attorney, Brownsville Division.

THE COURT: How do you plead to the allegations contained in that matter that was just read to me, sir? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Now, are you pleading guilty to both matters, the accusations alleged in the indictment as well as the matters to which you just made reference, that is, the enhancement about your prior conviction, because in fact you are guilty of both of those matters?

THE DEFENDANT: Because I was accompanying the persons who were arrested.

THE COURT: That is not my question. Are you pleading guilty to the charges against you because you are guilty?

THE DEFENDANT: Yes, I am guilty.

THE COURT: Are you also pleading guilty to the fact that you have been convicted heretofore, as a matter of fact, by this -- before me, this judge, as has just been indicated and read in the enhancement feature of this case? Are you also pleading guilty to that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you pleading guilty to both of those matters because in fact you are guilty?

THE DEFENDANT: I am stating and pleading guilty because I don't want to go before the Grand Jury.

THE COURT: Sir, in the United States of America, and that's where we are at this moment --

THE DEFENDANT: Yes, sir.

THE COURT: -- you don't have to plead guilty to anything unless you are guilty. My question to you is, are you guilty of what they accused you of in the indictment as well as the enhancement feature that was just read to me?

I do not want you to plead guilty if you feel like you are not guilty.

So my question to you is, are you pleading guilty because you are guilty of both of those matters?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You are sure?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anybody promised you anything, threatened you or forced you or done anything like that to get you to come up here and tell me that you are guilty when you are not guilty?

THE COURT: No one threatened me, Your Honor.

THE COURT: Knowing everything that can happen

to you, sir, do you still want to plead guilty to the allegations in this indictment as well as the enhancement features that have been filed by the Government regarding the other indictment? Do you still want to plead guilty knowing everything that can happen to you?

THE DEFENDANT: Yes. Yes.

THE COURT: All right. Listen very carefully.

Now, counsel, are you sure that enhancement is not a minimum of 20 years?

MR. YOUNG: No, Your Honor, because they started -- the original indictment involves a five to 40.

THE COURT: You are sure?

MR. YOUNG: Yes.

THE COURT: All right. The Court is going to rely upon what you tell me. You will never, never mislead the Judge.

MR. YOUNG: Yes, Your Honor.

THE COURT: Listen very carefully, Mr. Trevino, and tell me if these matters are true or not. You admit doing these things.

MR. YOUNG: That in April of 2000 the defendants Horacio Grimaldo and Rogelio Reyna negotiated with a confidential informant for the transportation of marijuana to the Fort Myers, Florida, area. Approximately 459 pounds of marijuana was actually received by the informant.

The negotiations were done by Grimaldo and Reyna on behalf of co-defendant Jose Fidel Trevino.

In early May, 2000, Horacio Grimaldo and co-defendant Jose Evorio Trevino, the brother of Jose Fidel -- excuse me -- Jesus Evorio Trevino, the brother of Jose Fidel Trevino, traveled to Florida in an attempt to provide the transportation fees to an undercover officer.

Jesus Evorio Trevino rented rooms, motel rooms, for himself and Grimaldo. Both spoke with undercover agents over the telephone regarding the payment of transportation fees for the marijuana.

Consensual recordings during April, May and June of this year were made between the informant, undercover officers and all four of the defendants.

Ultimately when the defendants could not come up with the transportation fees, the decision was made to arrest the defendants for the safety of the informant and undercover officers.

Upon arrest circumstantial evidence found in the wallets of all four defendants linked them to Florida telephone numbers used during the negotiations and Florida locations where some of the negotiations took place.

Co-defendants Rogelio Reyna and Horacio Grimaldo identified Jose Fidel Trevino as assisting in the narcotics transaction.

THE COURT: It never took place. There was never a delivery?

MR. YOUNG: Yes, Your Honor. We actually received the marijuana.

THE COURT: I am sorry?

MR. YOUNG: Yes, we did receive the marijuana.

THE COURT: Is what the Government's attorney just told me true?

MR. WILDE: Your Honor, I apologize, Your Honor. If we could remain silent on one phrase that was read by the Government, Your Honor, that the two co-defendants --

THE INTERPRETER: I am sorry. I couldn't hear you.

MR. WILDE: I apologize, Your Honor. The Government just read as part of the facts that the two co-defendants, Grimaldo and Reyna, did something on behalf of Mr. Trevino, Your Honor. On that particular line Mr. Trevino would like to remain silent, Your Honor. I believe that will be a sentencing issue that the Government has the burden of producing evidence on. Other than that, Your Honor, I believe Mr. Trevino wishes to agree to the facts read by the Government.

THE COURT: He does not admit that he worked with Reyna and Grimaldo?

MR. WILDE: No, Your Honor, he wishes to remain silent that they were doing acts on behalf of him.

THE COURT: Does he admit or not admit?

MR. WILDE: He admits all of the elements of the offense accused in Count 1, Your Honor.

THE COURT: He admits everything else?

MR. WILDE: Yes, Your Honor.

THE COURT: All right. Tell me what it is that he admits.

MR. WILDE: Your Honor, he admits that he --

THE COURT: And I want you to tell me, Mr. Trevino, whether you agree with what your attorney tells me.

Tell me exactly what it is that he agrees with.

MR. WILDE: Your Honor, as alleged in the indictment, Your Honor, he agrees that from April 2000 and up to the presentment of the indictment that he did knowingly and intentionally conspire and agree with persons known and unknown to the Grand Jurors.

THE COURT: How? Specifically how and with whom.

MR. WILDE: Your Honor, it is my understanding that the facts would show that the informant was dealing with co-defendants. They didn't trust one another. They got Mr. Trevino to assist as a middleman because they didn't trust one another. Mr. Trevino knew of the conspiracy. He knew of the marijuana. He was acting to help the informant and the other co-conspirators to conspire, possess, with intent to distribute the amount of marijuana alleged, Your Honor.

THE COURT: No, I can't. Tell me again what it is the Government alleges.

MR. YOUNG: Well, in some respects --

THE COURT: Specifically what it is -- what is it that the Government contends they can prove if this matter goes to trial.

MR. YOUNG: Your Honor, we intend to prove that this defendant assisted the informant and the other co-defendants in this case in the ultimate transportation or delivery of the marijuana to the informant in Brownsville.

THE COURT: How? When?

MR. YOUNG: He made arrangements in -- with the informant and with the other defendants, assisted -- placed a phone call specifically from Mexico to the informant which was recorded in June encouraging the informant to complete the negotiations.

THE COURT: What else did he do?

MR. YOUNG: He had telephone numbers. He had telephone numbers found in his wallet that matched the Florida numbers and maintained contact with the co-defendants in this case, helping to arrange for the ultimate delivery of the marijuana to the Florida area. He did not go to Florida as far as we know.

THE COURT: Did you do that, Mr. Trevino? Did you get involved with the informant and these people knowing what

they were going to do, that is, deliver 400 and some odd pounds, 459 pounds specifically --

MR. YOUNG: Yes, Your Honor.

THE COURT: -- to Florida?

THE DEFENDANT: Well, the informant said he had the money. He had, yes, the money in his hand.

THE COURT: Sir, do you want to plead guilty or not? Sir, do you want to plead guilty or not? Nobody is forcing you to plead guilty. I am here to make sure that nobody forces you to do anything.

The question is, were you involved with these people in the delivery of those 459 pounds of marijuana? Were you involved with them knowing that you were involved and knowing what was going to happen? Do you admit that or not?

THE DEFENDANT: I do confess it, Your Honor. I do admit it.

THE COURT: Why were you hesitant?

THE DEFENDANT: Because I never was aware of the amount and I never knew where it was going, Your Honor.

THE COURT: All right. Leave aside the amount, that you did not know what the amount was, did you -- did you knowingly and willfully participate in the delivery, in making the arrangements and the delivery of that marijuana in question to Florida?

THE DEFENDANT: No.

THE COURT: Okay, sir, I cannot take your plea of guilty. I will not take your plea of guilty. Set this matter for trial. This is before Judge Tagle.

THE CLERK: We have a jury coming in, Your Honor.

THE COURT: Very well. Is that the jury case we are going to try? We will try that case. I thought it was Mr. Garza's case we were going to try. Bring the jury in Tuesday.

Go ahead and rearraign Adan Ulloa-Rivera.

[PROCEEDINGS AS TO UNITED STATES VERSUS ADAN ULLOA-RIVERA]

(PROCEEDINGS ADJOURNED)

THE COURT: All right. We will now continue to call B-00-276, United States versus Jose Fidel Trevino.

You and I can speak in Spanish because the interpreter is going to be translating.

This morning you were sworn in and you were subject to perjury. If you say anything in these proceedings, whether today or hereafter, that is not true, and if you say something that is not true in these proceedings, as a result thereof you are subjecting yourself to perjury which will be a fine of $250,000 and five years in the penitentiary and a

three-year Supervised Release Term. You understand?

THE DEFENDANT: Yes, Your Honor, perfectly.

THE COURT: You are still under the terms of perjury if you say something that is not true.

THE DEFENDANT: Yes, I understand perfectly.

THE COURT: This morning, a few hours ago, the proceeding this morning, you indicated voluntarily you were going to give up certain rights and you were going to plead guilty.

THE DEFENDANT: Yes, Your Honor. Yes.

THE COURT: And you say you didn't do anything against your own will. Everything had to be -- only if you were in agreement that you wanted to plead guilty.

THE DEFENDANT: Yes, Your Honor.

THE COURT: You said that if you pled guilty you were going to give up certain rights.

THE DEFENDANT: I do. I remember.

THE COURT: You were going to give up the right to remain silent --

THE DEFENDANT: Yes, Your Honor.

THE COURT: -- and be tried before a jury. Do you remember that if you plead guilty you were going to be giving up those rights and this hearing was going to end everything --

THE DEFENDANT: Yes.

THE COURT: -- with or without a jury. You remember all of that?

THE DEFENDANT: Yes. Yes, I do recall.

THE COURT: And you were going to give up the right to ask for that right of appeal. You remember?

THE DEFENDANT: Yes, I do. Yes, Your Honor.

THE COURT: And you also told me that you were going -- that they were going to give up the right that the Government had to process you under Immigration laws. You remember that?

THE DEFENDANT: Yes, I do.

THE COURT: And you could receive no less than five years.

THE DEFENDANT: Yes.

THE COURT: And a fine of $250,000 that could be imposed. Do you remember that?

THE DEFENDANT: And eight years Supervised Release Term. Remember that? Remember all of that?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: You remember.

THE DEFENDANT: I understand perfectly, yes, I do.

THE COURT: You remember that?

THE DEFENDANT: Yes.

THE COURT: You said you understood everything this morning.

THE DEFENDANT: Yes, I do recall.

THE COURT: 459 pounds. And you said that you were pleading guilty. You remember all of that? And the right of appeal. You remember all of that?

THE DEFENDANT: Yes.

THE COURT: All of that is true?

THE DEFENDANT: Yes.

THE COURT: You were doing this voluntarily. No one has forced you or has threatened you. You remember all of that?

THE DEFENDANT: Yes, I do.

THE COURT: And talking about that -- and that you were going to ask the Judge to consider a recommendation in your case. You remember that?

THE DEFENDANT: Yes. Yes.

THE COURT: You remember that?

THE DEFENDANT: Yes, I do.

THE COURT: And all of that is true?

THE DEFENDANT: There is no doubt about it.

THE COURT: So you pleaded guilty. So we were, in essence, what your participation or involvement in this was. Remember?

THE DEFENDANT: Yes, I do.

THE COURT: Remember? And that's what we were doing. And you gave me to read this morning -- you wrote a

letter and in that letter you said you were responsible for all of those acts, and you kept talking about this informant in the letter. And you indicated that he caused all your problems but that you had lent yourself to that intentionally and deliberately to find yourself in this. You remember all of that?

THE DEFENDANT: Yes.

THE COURT: And you were hesitating.

THE DEFENDANT: Yes.

THE COURT: Remember? You were hesitating in pleading guilty. And that you were completely voluntarily.

THE DEFENDANT: I was frightened. I was frightened. Pardon me, Your Honor, I was frightened.

THE COURT: Now, all of that we have just gone over was in the Spanish language. It has been translated by the duly certified court interpreter into English. And you told me that it was all right with you and I dialoguing in Spanish. We are now in English.

Was there any objection from counsel?

MR. WILDE: No objections, Your Honor.

MR. YOUNG: No objections, from the United States.

THE COURT: Now, we are back in English. You just told me a few minutes ago, well, less than a few minutes ago, that one of the reasons that you were not accepting responsibility for your activities in this case was resultant

from the fact that you were apprehensive or scared. You just told me that.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, the Government's attorney is now going to tell me what it is that you did in this case. You tell me whether that is what you did.

Remember, you do not have to plead guilty unless you want to. Remember, it is a thing completely within your province. That's why I am here, to make sure nobody convinced you or persuaded you to do something against your will. You understand that? All right, sir.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you understood everything?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Have you told me anything that is not true?

THE DEFENDANT: No, everything is true.

THE COURT: Listen very carefully.

MR. YOUNG: Your Honor, if called upon to do so, the United States would introduce evidence that in April 2000 the defendants Horacio Grimaldo and Rogelio Reyna negotiated with a confidential informant for the transportation of marijuana to the Fort Meyers, Florida, area. Approximately 459 pounds of marijuana was actually received by the informant.

In early May 2000 Horacio Grimaldo and co-defendant

Jesus Evorio Trevino, the brother of Jose Fidel Trevino --

THE COURT: The informant received 459 pounds --

MR. YOUNG: Yes, Your Honor.

THE COURT: -- of marijuana?

MR. YOUNG: Yes, Your Honor.

THE COURT: Okay.

MR. YOUNG: In early May 2000 Horacio Grimaldo and co-defendant Jesus Evorio Trevino, the brother of Jose Fidel Trevino, traveled to Florida in an attempt to provide the transportation fees to an undercover officer. Jesus Evorio Trevino rented hotel rooms for himself and Grimaldo. Both spoke with undercover agents over the telephone concerning the the transportation -- the payment of transportation fees for the marijuana.

A consensual recording was made in June 2000 between the informant and this defendant where the defendant encouraged the informant to complete the narcotics deal.

Ultimately, when the --

THE COURT: This defendant, Jose Fidel Trevino?

MR. YOUNG: Yes, Your Honor.

THE COURT: All right. Encouraged the informant to consummate this transaction.

MR. YOUNG: Yes, Your Honor.

THE COURT: Involving 459 pounds.

MR. YOUNG: Yes, Your Honor. Ultimately, when the

defendant could not come up with the transportation fees, the decision was made to arrest the defendants. Jose Fidel Trevino, Jesus Evorio Trevino and Horacio Grimaldo were arrested shortly after meeting with the confidential informant on June 11, 2000.

THE COURT: Now, did the defendant contemplate to be the one that was going to pay for the transportation of the marijuana in question?

MR. YOUNG: Well, the defendant was assisting the other defendants.

THE COURT: Assisting --

MR. YOUNG: Correct.

THE COURT: -- in that regard?

MR. YOUNG: Yes. Rogelio Reyna was arrested later that day. Upon arrest circumstantial evidence found in the wallets of all four defendants linked them to Florida phone numbers used during the negotiations --

THE COURT: Including this defendant, Jose Fidel Trevino?

MR. YOUNG: Yes, Your Honor.

THE COURT: -- and Florida locations where some of the negotiations took place.

Co-defendant Horacio Grimaldo and Rogelio Reyna identified Jose Fidel Trevino as assisting in the narcotics transaction.

THE COURT: Is all of that true, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you knowingly participate in this plan to transport 459 pounds of marijuana to Florida?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you admit that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Well, that makes you guilty of Count Number 1, sir, and I am going to so find you guilty of Count Number 1.

Having found you guilty of Count Number 1, I am going to order the preparation of a presentence report to be completed by the 26th day of October of the year 2000; that all written objections be filed by the 7th day of November of the year 2000; that a final report be submitted to the Court by the 21st day of November of the year 2000 and your matter is set for hearing on before this Judge on the 28th day of November of the year 2000 at 8:30 in the morning.

A copy of this order will be made available to the record and all counsel.

Now, is there any reason why this morning's proceeding and this proceeding should not be made a total report of what exactly ensued in connection with this process?

MR. WILDE: No reason, Your Honor, and no objections.

THE COURT: Any objection from the Government?

MR. YOUNG: No, Your Honor.

THE COURT: Any objection from you, Mr. Trevino?

THE DEFENDANT: No.

THE COURT: Very well. A copy of this order will be made available for the record and all counsel. All right. Anything else?

THE CLERK: The jury will be dismissed, Your Honor.

THE COURT: The jury will be dismissed. We will be in recess.

U.S. MARSHAL: All rise.

(PROCEEDINGS ADJOURNED)

PROCEEDINGS, JANUARY 12, 2001:

[INTERPRETED]

THE COURT: We will call B-00-CR-276, United States versus Jose Trevino.

MR. YOUNG: Jody Young for the United States.

MR. STAPLETON: Ed Stapleton for Jose Fidel Trevino, Your Honor.

THE COURT: Are you ready to proceed also in B-97-CR-388?

MR. STAPLETON: Your Honor, we have already entered a plea on that. We are here for sentencing on both.

THE COURT: You entered a plea before whom?

MR. STAPLETON: Judge -- our visiting judge, Your Honor.

THE COURT: So you pled true?

MR. STAPLETON: Lemelle. Yes, Your Honor, we pled true in front of Judge Lemelle.

THE COURT: Both matters?

MR. STAPLETON: Yes, Your Honor.

THE COURT: All right. And did he revoke?

MR. STAPLETON: Yes, Your Honor, he did.

THE COURT: Have you had an opportunity to look at the presentence report, sir, prepared in cause --

THE DEFENDANT: Yes, sir.

THE COURT: -- B-00-CR-276?

THE DEFENDANT: Yes.

THE COURT: All right. Did you find anything wrong therein?

THE DEFENDANT: No.

THE COURT: Sir?

THE DEFENDANT: No.

THE COURT: Any reason why the report should not be adopted.

MR. STAPLETON: No, Your Honor.

THE COURT: It is so ordered.

Do you also acknowledge, sir, that earlier you had also pled true to the allegations in Cause B-97-CR-388 in which there had among other things been imposed a four-year Supervised Release Term?

THE DEFENDANT: Yes.

THE COURT: And in which you pled true before Judge Lemelle.

THE DEFENDANT: Yes.

THE COURT: You still plead true to that?

THE DEFENDANT: Yes, sir.

THE COURT: I understand he revoked your Supervised Release Term in that.

THE DEFENDANT: Yes.

THE COURT: All right, sir. Do you --

Any reason why the report should not be adopted in

the full?

MR. STAPLETON: No, Your Honor.

THE COURT: It is so ordered.

Do you and/or your attorney have anything to say to me before I decide what to do in your case?

THE DEFENDANT: Yes.

THE COURT: In this connection, sir, you do acknowledge that you had been convicted heretofore, do you not?

THE DEFENDANT: Yes, sir.

THE COURT: Do you and/or your attorney have anything to say to me before I decide what to do in your case?

THE DEFENDANT: Yes, Your Honor. Yes, Your Honor, because I would like to address myself to you as the highest authority here in the Federal court. I would like to ask for your mercy, for clemency. I am not -- it is not because of my own doing that I am exactly here in front of Your Honor today. I am very repentant. And because I was deceived I am here. It wasn't of my own design. It took place. But I am here because somebody else deceived me.

THE COURT: Well, you had earlier indicated that you knew what you were doing.

THE DEFENDANT: Yes, because of deception I was brought here to the United States.

THE COURT: Deception by the people, not the

Government.

THE DEFENDANT: No, from the informant.

THE COURT: All right. All right, sir. Do you have anything else to say?

THE DEFENDANT: Just ask for your help. Take into consideration my family and my children and ask for just one chance in this life. Thank you.

THE COURT: Anything from counsel?

MR. STAPLETON: Yes, Your Honor, if I may. I would first like to acknowledge that his family is in the courtroom. I previously provided the Court with copies of letters from the family, Defendant's A through F, which I would ask to offer at this time, Your Honor.

THE COURT: It will be acknowledged. Anything else?

MR. STAPLETON: And I will tell the Court there is a plea agreement in this case.

THE COURT: All right. In Cause B-00-CR-276, pursuant to the Sentencing Reform Act of 1984, I am going to commit you to the custody of the Bureau of Prisons for a period of 120 months.

I am also going to impose an eight-year Supervised Release Term.

I am not going to impose a fine against you because of your inability to pay but I am going to impose an assessment of $100 as required by law.

All conditions of Supervised Release Terms will apply, as well as recommendations herein, which will include the condition that if you are deported you are not to the return to this country unlawfully because if you do you are going to be facing a long time in jail just for coming back.

In Cause B-97-CR-388, the Court having revoked your Supervised Release Term, I am going to commit you to the custody of the Bureau of Prisons for a period of 12 months. That sentence will run concurrently with that in B-00-CR-276.

As justification for these sentences, I am going to adopt all justifications which are included in this report and notice that your sentences do conform to the mandates of the Sentencing Guidelines and the agreements of the parties.

You discuss his rights of appeal.

MR. YOUNG: The United States moves to dismiss the remaining counts, count Honor.

THE COURT: Motion will be granted.

MR. STAPLETON: Thank you, Your Honor.

[PROCEEDINGS ADJOURNED]

IN THE UNITED STATES DISTRICT COURT:

FOR THE SOUTHERN DISTRICT OF TEXAS:

I, WILLIAM G. HOLLOWAY, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

______________________________ DATE:________________

WILLIAM G. HOLLOWAY
OFFICIAL COURT REPORTER

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE FIDEL TREVINO, | § | |
| Petitioner-Defendant | § | |
| | § | |
| vs. | § | CA B-02-006 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff | § | |
| ( CR B-00-276) | § | |

ORDER

The Court, having considered Trevino's motion to vacate sentence and the Government's response, concludes that dismissal of the cause is warranted.

Trevino has failed to overcome the jurisdictional burden of demonstrating cause for failure to pursue his claim on direct appeal. Trevino fails to demonstrate any prejudice as a result of the complained of deficiencies or his actual innocence. Trevino fails to show his attorney's performance was deficient or that he suffered any prejudice therefrom. Even if the merits were reached, the record refutes the substance of each of his claims.

Therefore, Trevino's motion should be DISMISSED in its entirety.

DONE on this the ______ day of _________________, 2002 at Brownsville, Texas.

FELIX RECIO
UNITED STATES MAGISTRATE JUDGE